Upon review of all of the competent evidence of record with reference to the errors assigned, the Full Commission hereby REVERSES the Opinion and Award of the Deputy Commissioner and makes the following FINDINGS OF FACT:
The following were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. Plaintiff sustained an admittedly compensable injury by accident on or about 4 October 1989, while engaged in her normal job duties with defendant-employer.
2. St. Paul Fire and Marine Insurance Company was the compensation carrier on the risk at that time.
* * * * * * * * * * *
FINDINGS OF FACT
1. Plaintiff began work for defendant-employer on 1 September 1989 as a nurse's aide. Her duties included helping lift patients. Prior to her employment with defendant, plaintiff worked for a physician in Georgia for three years.
2. On or about 4 October 1989, plaintiff's average weekly wage was $146.25.
3. On or about 4 October 1989, plaintiff sustained a compensable injury by accident arising out of and in the course of her employment with defendant-employer. She worked intermittently thereafter until 18 October 1989.
4. The parties then entered into an Industrial Commission Form 21, Agreement for Compensation for Disability, which was approved by the North Carolina Industrial Commission on 16 May 1990.
5. As a result of her injury by accident, plaintiff was treated at the Spruce Pine Emergency Room on 5 October 1989 and was given a prescription of Percocet for pain.
6. On or about 23 October 1989, plaintiff came under the care and treatment of Dr. McCullough, an orthopedic surgeon. Dr. McCullough ordered a CT-scan, the results of which were normal. Dr. McCullough recommended physical therapy in Asheville, a 60-mile (one-way) drive from plaintiff's home.
7. In November of 1989, Plaintiff referred herself to the emergency room at St. Josephs Hospital, where she was attended by Dr. Burt. Dr. Burt placed plaintiff in physical therapy at St. Joseph's Hospital physical therapy department, primarily for relaxation exercises. However, it was too painful for her to continue. Plaintiff testified at the hearing that the physical therapy hurt more than it helped her.
8. On or about 21 November 1989, defendant-carrier procured the services of Ms. Donna Kropelnicki, rehabilitation specialist, for assistance in handling plaintiff's claim. Ms. Kropelnicki scheduled all appointments with health care providers approved by the carrier. Plaintiff missed or was late for a number of appointments. The Asheville location scheduled for many of the appointments, physical therapy sessions and tests was a drive of 60 miles from plaintiff's home. Although compensation claimants are entitled to mileage reimbursements for appointments more than 10 miles from home, this was not offered to Ms. Whitson. There were many days plaintiff could not drive to Asheville because of physical pain. During this time plaintiff experienced financial and personal problems which made trips to Asheville difficult. Her husband was totally disabled with heart problems, and died in February of 1991. She also had responsibility for her father-in-law, a disabled and chronic diabetic, and a young daughter at home.
9. On or about 7 December 1989, plaintiff presented to Dr. Weiss, a neurosurgeon, who, like Dr. McCullough, diagnosed plaintiff's condition as a lumbar strain and recommended physical therapy three times per week as the appropriate course of treatment. Dr. Weiss scheduled an MRI for plaintiff, the results of which were normal.
10. During plaintiff's initial consultation with Dr. Weiss, plaintiff expressed her concerns about driving to Asheville, 60 miles from her home, to receive physical therapy treatments. Plaintiff's physical therapy, therefore, was rescheduled at the hospital in Burnsville, beginning 12 December 1989.
11. On 16 January 1990, plaintiff presented to Dr. Weiss in follow-up. Dr. Weiss recommended a functional capacity evaluation and a work hardening program as the appropriate course of treatment.
12. Plaintiff was given a functional capacity evaluation on or about 29 January 1990. Plaintiff did not complete the test due to personal reasons, but returned on 9 March 1990 to complete the test. According to the occupational therapist, Nancy Leigh Douglas, and the physical therapist, Charlie Robbins, both of whom conducted plaintiff's functional capacity evaluation, the overall results of the test were invalid since the data indicated that plaintiff was magnifying her symptoms. However, Mr. Robbins testified by deposition that fear of further injury or aggravation of her symptoms might cause plaintiff to hold back or hesitate to give full effort.
13. On or about 21 February 1990, when plaintiff presented to Dr. Weiss in follow-up, he did no examination. Prior to meeting with the plaintiff, Dr. Weiss spoke privately with Ms. Kropelnicki, who testified that she gave him a copy of the functional capacity evaluation then. Plaintiff testified that she heard the rehabilitation specialist tell him, "Let's cut this one loose." Ms. Kropelnicki denies this. In his notes concerning this visit, Dr. Weiss concluded that plaintiff had reached maximum medical improvement and released plaintiff from his care, opining that she had sustained a five percent permanent partial disability to her back.
14. On or about 30 March 1990, Dr. Weiss wrote that plaintiff was "capable of returning to her regular job as a nurse's aide without any physical limitations," and that "radiographic studies of her lower back are normal."
15. On or about 24 April 1990, an Industrial Commission Form 24 was approved by the Commission based on Dr. Weiss' report. Defendants paid temporary total disability compensation due for the period ending April 30, 1990.
16. On or about 24 May 1990, plaintiff referred herself to Dr. Lincoln, who made no diagnosis at that time, but later referred her to Dr. Keith Maxwell, orthopedic surgeon, for further evaluation.
17. On October 4, 1990 Dr. Maxwell examined plaintiff, reviewed an MRI scan and an enhanced CAT scan, and took flexion x-rays in his office. Dr. Maxwell's impression was that plaintiff had facet arthropathy or inflammation or strain of the joints in the back of the lumbar spine. In Dr. Maxwell's opinion, the pain plaintiff described was very typical in patients with plaintiff's history and physical findings. Dr. Maxwell prescribed lortab for plaintiff because his office tries to keep patients to a minimal use of narcotics.
18. Plaintiff was seen in follow-up by Dr. Maxwell through 27 August 1991. The treatment he recommended included facet blocks, which by controlling her pain, enabled plaintiff to participate successfully in physical therapy. Although defendants refused to authorize and pay for it, plaintiff was accepted on referral by St. Josephs Hospital's physical therapy program.
19. On the last office visit on August 27, 1989, a follow-up after her last facet block, Dr. Maxwell noted that plaintiff was overall improved, optimistic about her back problem, and had been losing weight and becoming more active. She was participating in an EMT course and doing well in it. Dr. Maxwell believed plaintiff had reached maximum medical improvement on August 27, 1991 and had suffered a 10% permanent partial impairment of the spine as a result of the injury by accident of October 4, 1989. In Dr. Maxwell's opinion, plaintiff could perform the duties of a nurse's aide after August 27, 1991 with proper body mechanics. However, Dr. Maxwell felt she may require interval facet blocks from time to time in the indeterminate future.
20. Until plaintiff saw Dr. Maxwell in October of 1990, none of the doctors defendant approved for plaintiff offered any treatment beyond physical therapy and drugs for plaintiff's pain. Plaintiff had found it necessary to visit the emergency room on more than one occasion due to pain. The physical therapy prescribed by defendants' doctors did not work because it was too painful for her condition without addressing the discomfort caused by movement.
21. On or about 12 December 1990, plaintiff, through counsel, sought approval from the Industrial Commission for the treatment being rendered by Dr. Maxwell, which was then denied. However, plaintiff continued to receive care and treatment from Dr. Maxwell through and including 27 August 1991. Dr. Maxwell's treatment of plaintiff tended to effect a cure, give relief and shorten the period of plaintiff's disability. Consequently, plaintiff's timely motion for approval of Dr. Maxwell is hereby GRANTED. N.C.G.S. §§ 97-25 and 97-85.
22. As a result of her injury by accident on or about 4 October 1989, plaintiff suffered from facet arthropathy.
23. As a result of her injury by accident on or about 4 October 1989, plaintiff was incapable of earning wages with defendant-employer or in any other employment after 18 October 1989 through 27 August 1991, except for $300.00 earned in March or April of 1991 working at Video World.
24. As a result of her injury by accident on or about 4 October 1989, plaintiff sustained a ten percent permanent partial disability to her back. The undersigned accept Dr. Maxwell's assessment of permanent partial disability because of the length of time he treated her and his success in her treatment.
25. The taking of evidence and hearing before the Deputy Commissioner concluded with the receipt at the Commission of the depositions of Drs. Weiss and Maxwell on May 3, 1992.
* * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission enters the following additional
CONCLUSIONS OF LAW
1. Plaintiff is entitled to further temporary total disability benefits from 1 May 1990 through 27 August 1991, less $300 plaintiff earned in March or April of 1991, as a result of her injury by accident on or about 4 October 1989. N.C.G.S. § 97-29.
2. As a result of her injury by accident on or about 4 October 1989, plaintiff is entitled to benefits for a 10% permanent partial disability of her back. N.C.G.S. § 97-31(23).
3. Defendant is obligated to pay bills for the above-referenced medical services, and such other medical compensation as may tend to effect a cure, give relief, or shorten the period of disability resulting from plaintiff's injury by accident of 4 October 1989. N.C.G.S. §§ 97-25 and 97-2(19); Hyler
v. GTE Products Co., 333 N.C. 258, 425 S.E.2d 698 (1993).
4. Plaintiff is entitled to have her medical expenses for treatment by Dr. Maxwell paid by defendants as these treatments are now authorized by the Industrial Commission. N.C.G.S. §§ 97-25
and 97-85.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Plaintiff's timely motion for approval of Dr. Maxwell is GRANTED. N.C.G.S. § 97-25.
2. Defendants shall pay to the plaintiff, in one lump sum, temporary total disability compensation benefits at the rate of $97.50 per week for the period 1 May 1990 through 27 August 1991, less the $300 earned at other employment, subject to the attorney fee allowed herein. N.C.G.S. § 97-29.
3. Defendants shall pay to the plaintiff, in one lump sum, compensation benefits at the rate of $97.50 per week for 30 weeks beginning August 27, 1991, for permanent partial disability of her back. N.C.G.S. § 97-31(23).
4. Defendants shall pay interest on the above compensation at the judgment rate of 8% per annum from May 3, 1992 directly to the plaintiff, without deduction of attorney's fees. N.C.G.S. § 97-86.2.
5. Defendant shall pay the costs of medical compensation incurred by reason of the subject compensable injury, including treatment by Dr. Maxwell and physical therapy at St. Joseph's Hospital, when the bills for same have been submitted to and approved by the Commission. N.C.G.S. § 97-25.
6. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff is approved, and shall be deducted from the above compensation awarded pursuant to N.C.G.S. §§ 97-29
and 97-31, and paid directly to plaintiff's counsel. N.C.G.S. § 97-90.
7. Defendants shall bear the costs and shall also pay expert witness fees of $200.00 to Dr. Keith Maxwell, $80.00 to Donna Kropelnicki, R.N., and $80.00 to physical therapist Charlie Robbins.
 S/ ________________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ _____________________ COY M. VANCE COMMISSIONER
S/ _____________________ FORREST H. SHUFORD, II SPECIAL DEPUTY COMMISSIONER
JRW/jss 1/26/95